```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------x
EUGENE REISKE                  :
                               :
            Plaintiff,         :
                               :
v.                             :     Civil No. 3:09CV1086(AWT)
                               :
BLACK & DECKER (U.S.) INC.     :
                               :
            Defendant.         :
-------------------------------x
```

**RULING RE MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiff, Eugene Reiske, brings product liability claims pursuant to Conn. Gen. Stat. § 52-572m, et seq., commonly referred to as the Connecticut Products Liability Act. With respect to each claim he seeks statutory punitive damages pursuant to Conn. Gen. Stat. § 52-240b. The defendant has moved for summary judgment on the issue of statutory punitive damages. For the reasons set forth below, the motion is being granted.

**I. FACTS**

On November 24, 2008, the plaintiff was operating a DeWalt DPH 3800 power washing unit, manufactured by the defendant, Black & Decker (U.S.) Inc. ("Black & Decker"), within the scope of his employment at Derecktor Shipyards in Bridgeport, Connecticut. While the plaintiff was using the power washer, the power washer's hose unscrewed or uncoupled from the spray nozzle and struck the plaintiff in the eye. The hose connection was covered by a hard rubber sleeve which was subsequently removed with a

utility knife by a second Derecktor Shipyards employee.

The plaintiff's liability expert, Michael Shanok, opined that the connection was inadequately engaged and torqued during assembly, and thus there was a manufacturing defect.

The defendant conducts periodic audit tests of all its products for performance and life-span related issues. Intertek Testing Services, an independent third party, issued a report verifying that the DPH 3800 power washer complied with Underwriters Laboratories and Canadian safety standards.  The only incident known to the defendant involving an uncoupling of the hose on the DPH 3800 power washer is the incident in which the plaintiff was injured. During 2008, the defendant sold 2,022 DPH 3800 power washers.

**II.   LEGAL STANDARD**

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law.  Fed. R. Civ. P. 56(c).  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994).  Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law."

3

Id.  As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id.  Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment.  See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in its favor."  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)).  Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997)

4

(internal quotation marks omitted) (quoting <u>Western World Ins. Co. v. Stack Oil, Inc.</u>, 922 F.2d 118, 121 (2d. Cir. 1990)).

### III.  DISCUSSION

"Punitive damages may be awarded if the claimant proves that the harm suffered was the result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product." Conn. Gen. Stat. § 52-240b.

> "Reckless misconduct refers to highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. Recklessness, therefore, is more than negligence and also is more than gross negligence."

<u>Sutton v. Soul for Real, LLC</u>, No. NNCV095031816S, 2010 WL 1052934 at *1 (Conn. Super. Feb. 16, 2010) (quoting <u>Rubel v. Wainwright</u>, 86 Conn.App. 728, 740-41 (2005)).

The defendant has presented evidence that the DPH 3800 power washer had been tested by an independent third party and that it complied with Underwriters Laboratories and Canadian safety standards. The defendant has also presented evidence that its products were subject to periodic audit tests to ensure proper performance. The only incident known to the defendant involving an uncoupling of the hose on a DPH 3800 power washer is the incident in which the plaintiff was injured.

The plaintiff summarizes the evidence he contends creates a genuine issue of material fact as follows:

> In this case, the part of the hose that uncoupled was covered by a hard rubber sleeve.  A user could <u>not</u> <u>see</u> the parts uncouple, nor would he know from reviewing the accompanying product manual that there was a quick-disconnect coupling underneath the rubber sleeve. Chuck Webster, a co-worker of the plaintiff, was asked by the Derecktor supervisor to repair the power washer hose so that workers could finish washing the boat.  He testified in his deposition that in order to repair the hose, he had to cut off a hard rubber sleeve that covered the connection.  He states that the hose was unscrewed from the quick connect and that the quick connect was underneath a seven inch long rubber sheath.  He further testified that he could not remove that rubber sheath with his own hands and had to cut it off with a knife.  The defendant's Senior Safety Assurance Manager stated at his deposition that " . . . it's manufactured in a fashion that with the amount of torque applied on that joint, that the design is such that you would not expect it (the hose) to uncouple."  Exhibit B, Mitrou deposition, p. 84-85.

(Pl.'s Br. in Opp. 4-5, Doc. No. 75-1.)

However, taking as true the plaintiff's assertions, they could not support a finding of recklessness.  There is no evidence of a conscious choice by the defendant of a course of action with knowledge of the serious danger to others, or with knowledge of facts that would disclose this danger to a reasonable person.  Because the defendant had no prior notice of any manufacturing defect (or notice of facts that would have disclosed such a defect to a reasonable person) with respect to the hose connection, it could not have recklessly disregarded the risk associated with such a defect.  Therefore summary judgment is being granted as to the plaintiff's claims for statutory

6

punitive damages.

**IV. CONCLUSION**

For the reasons set forth above, the Motion for Summary Judgment (Doc. No. [58]) is hereby GRANTED.

It is so ordered.

Signed this 2nd day of March, 2012 at Hartford, Connecticut.

                                                            /s/AWT  
                                        Alvin W. Thompson  
                                    United States District Judge